**In re OLIVE STREET INVESTMENTS, INC., Debtor.**

**No. 89–03056–BKC–JJB.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Aug. 8, 1990.

Henry F. Luepke, Jr., Larry E. Parres, St. Louis, Mo., for debtor-in-possession.

Steven N. Cousins, Susan Bradley Buse, St. Louis, Mo., for Howard Sav: Bank.

Gerald A. Rimmel, Clayton, Mo., Operating Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES J. BARTA, Bankruptcy Judge.

This cause coming to be heard on July 12, 1990, upon the Objections of The Howard Savings Bank ("Howard") and the United States Trustee to Debtor's Disclosure Statement filed April 30, 1990, the Amended Motion to Dismiss of The Howard Savings Bank filed May 11, 1990, Debtor's Motion for the Court to Abstain pursuant to 28 U.S.C. § 1334(c)(2) filed May 9, 1990, and Howard's Objection thereto; and all creditors and parties in interest having received more than twenty (20) days adequate written notice thereof; and the Court having held a full hearing thereon and announced its determinations and orders from the bench now enters these findings of facts and conclusions of law, pursuant to Bankruptcy Rule 7052 and Federal Rules of Civil Procedure Rule 52(a).

1. This is a core proceeding pursuant to 28 U.S.C. § 157(b)–(2)(A), and (O).

2. At 11:11 a.m. on July 25, 1989, Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*

3. Immediately after such filing, The Howard Savings Bank filed its Motion for, *inter alia,* Relief From or Modification of Automatic Stay (the "Motion for Relief") seeking leave to proceed with its scheduled foreclosure sale of certain property of the Debtor known as the Syndicate Trust Building (the "Property").

4. On July 25, 1989, the Bankruptcy Court granted Howard relief from the automatic stay (the "Order for Relief") after conducting an expedited telephonic hearing. The Debtor and Howard were each represented by legal counsel. Evidence and legal argument were presented by both parties. The Court granted relief from the automatic stay for cause and upon a finding that the Debtor had no equity in the Property and that the Property was not necessary for an effective reorganization.

5. Debtor did not request or obtain a stay of the Order which granted relief from the stay. However, on July 31, 1989, the Debtor's motion for a stay of the sale of the property pending appeal was denied by the Bankruptcy Court.

6. The record here indicates that Howard proceeded with its scheduled fore-

closure sale on July 25, 1990, that the Debtor did not retain a right to redeem under state law, and that Howard acquired title to the Property as the successful bidder at foreclosure for $15,000,000.00.

7. Debtor filed its Notice of Appeal to the District Court for the Eastern District of Missouri, Eastern Division, on or about July 28, 1989. The District Court dismissed the appeal as moot on October 10, 1989. 106 B.R. 183.

8. Thereafter, the Debtor filed its Notice of Appeal to the United States Court of Appeals for the Eighth Circuit. This appeal was pending as of July 12, 1990.

9. On March 20, 1990, after a hearing on notice, this Court denied the Motion of The Howard Savings Bank to Dismiss or Convert so as to afford the Debtor additional opportunity to file a Disclosure Statement and to propose a Plan of Reorganization; ordered the appointment of an operating trustee ("the Bankruptcy Trustee"); ordered that the Bankruptcy Trustee report to the Court on April 30, 1990, concerning the administration of the estate and the recommendations described at 11 U.S.C. § 1106(a)–(5); and ordered the Debtor to file a Disclosure Statement and proposed Plan of Reorganization no later than April 30, 1990.

10. A review of the testimony presented on March 20, 1990, and a review of the Schedules and Operating Reports filed on behalf of the Debtor, and a review of the evidence presented in support of these Motions indicates that after the commencement of this case Allan A. Pullman ("Pullman"), President and Sole Shareholder of the Debtor, transferred or caused the transfer of approximately $17,922.00 from the Debtor's bank account to third parties. *See,* Footnotes 1, 4 and 5, Trustee's Operating Report for April, 1990, and Exhibit B to February, 1990, Operating Report. These transfers were made without Bankruptcy Court authority and were for personal and non-debtor business use by Mr. Pullman. The amount of these transfers was repaid into the Debtor's account by Mr. Pullman and/or entities controlled by him, prior to March 19, 1990, the first date set for a

hearing on the motions of the United States Trustee to dismiss or convert this case, and for a return of property of the estate.

11. On April 30, 1990, the Bankruptcy Trustee reported to the Court that the value of the Property, which was essentially the Debtor's sole asset prior to Howard's acquisition of title through foreclosure, did not appear sufficient to sustain a feasible financial reorganization of the Debtor. He indicated that his report would not be changed if the Debtor were to reacquire title to such Property.

12. The Debtor filed a Disclosure Statement and proposed Plan of Reorganization on April 30, 1990. The hearing on the Disclosure Statement was set for June 12, 1990, and, upon request of Debtor was subsequently continued to July 12, 1990.

13. Both The Howard Savings Bank and the United States Trustee filed objections to the adequacy of the Disclosure Statement. Howard also filed an Amended Motion to Dismiss the Chapter 11 Reorganization Case.

14. On April 25, 1990, Debtor filed a Motion for the Court to Abstain pursuant to 28 U.S.C. § 1334(c)(2) seeking leave to file in state court a Complaint to Set Aside Foreclosure. Howard filed its objection thereto.

15. Howard is the holder of a claim in the approximate amount of $14,674,070.88 as of March 29, 1990, plus additional costs and expenses. This claim would increase to an amount in excess of $29,000,000 if Debtor were to reacquire title to the collateral foreclosed upon by Howard in partial satisfaction of the total claim.

16. The Debtor's Disclosure Statement does not contain information sufficient to enable a hypothetical reasonable investor, as defined in 11 U.S.C. § 1125(a)(2), to make an informed judgment about the Plan of Reorganization as required by 11 U.S.C. § 1125(a)(1).

17. The Disclosure Statement contains insufficient financial information. Specifically, but not by way of limitation, the Disclosure Statement states that the fea-

sibility of the Plan of Reorganization is contingent upon the Debtor's ability to obtain title to and finance the Property. However, the Disclosure Statement does not disclose the affiliations of the Debtor with numerous other companies owned and/or controlled by Debtor's sole stockholder and president, Allan A. Pullman, nor does it disclose the financial status of Pullman, or the Pullman controlled entities. The financial status of Pullman and the other Pullman controlled entities directly impacts upon the Debtor's ability to obtain financing of the Property, and therefore directly impacts upon the feasibility of the proposed Plan of Reorganization.

18. The Disclosure Statement refers to an Appraisal which values the Property at thirty-seven million, four hundred thousand dollars ($37,400,000) as of December 1, 1989. The purpose of the Appraisal was to establish value as a basis for loan collateralization. The appraised value was premised primarily upon income and cost approaches in part because "there is no active market in the downtown area for large office buildings." *Appraisal Report*, Second unnumbered page of the Valuation section, Exhibit C to Debtor's Responses to Howard's First Interrogatories Directed to Debtor. Without specific references to other costs, expenses and delays, and in the circumstances presented in this case, the inclusion of this appraised value in the Disclosure Statement is misleading.

19. The Disclosure Statement has not disclosed that the Bankruptcy Court had previously determined that the fair market value of the Property for purposes of the motion for relief from the stay was approximately fifteen million dollars ($15,000,000).

20. The Disclosure Statement has not disclosed certain details concerning the original financing loan with Consolidated Capital Income Trust, wherein the Debtor is alleged to have defaulted under a settlement agreement after it had allegedly defaulted under the original loan agreement.

21. The Disclosure Statement alleges that a loan from Howard was obtained to substantially renovate the Property in 1986, suggesting that the Property had been recently improved. The evidence suggests no material renovation has been begun by the Debtor.

22. The Disclosure Statement does not adequately disclose that the Debtor had been unable to obtain refinancing or a commitment to refinance its secured debt during the fourteen (14) months preceding the commencement of this case despite repeated attempts and negotiations.

23. The Disclosure Statement does not disclose what, if any, inquiries have been made or efforts have been expended, or are intended to be made or expended, concerning financing or sale of the Property as contemplated under the Plan of Reorganization.

24. The Disclosure Statement states that the Debtor's attorney's fees have been paid by Pullman pursuant to an agreement between the Debtor's attorneys and Pullman. However, the Debtor's Disclosure of Fees pursuant to Bankruptcy Rule 2016(b) filed on April 11, 1990, and other dates specifically identifies Pullman or Pullman controlled entities as the sources of such fees. The payment of fees by Pullman or Pullman controlled entities has not been approved by the Court, notwithstanding the Debtor's apparent intent under the Plan, to satisfy these loans or contributions prior to payment to other parties under the Plan. Further, it is not disclosed that conflicts of interest may be found to exist with respect to the legal representation of the Debtor by counsel retained and paid by Pullman and/or Pullman controlled entities, which conflicts may impact on the feasibility and fairness of this Plan of Reorganization under 11 U.S.C. §§ 327(a) and 1129.

25. The Disclosure Statement does not provide sufficient information concerning the amount of administrative expenses, including loan costs, sale costs and costs incurred in the operation of the business, as well as Class 3 employee claims and professional compensation.

26. Debtor lists Howard's claim in the amount of $28,736,359.00, based upon the assumption that the Debtor will regain title to the Property. If this assumption is ac-

cepted, Howard's principal, interest and other costs would have accrued in an amount in excess of $29,000,000 as of the date of commencement of this case.

27. Debtor alleges that the claims of the creditors, including Howard, are unimpaired under the Plan, when, in fact, such claims appear substantially impaired under 11 U.S.C. § 1124 inasmuch as Debtor proposes to enjoin attempts to collect the claims outstanding and to otherwise alter the legal, equitable and contractual rights of Howard and other creditors.

28. The Disclosure Statement identifies neither any limits on the time periods within which the Debtor must (a) acquire title to the Property; (b) finance or sell the Property; (c) reach confirmation; or (d) make a distribution under the Plan; nor any alternative if Debtor cannot generate at least thirty million dollars ($30,000,000) in proceeds or loans.

29. The Disclosure Statement does not address the effect of Howard's exercise of its election under 11 U.S.C. § 1111(b) or Howard's proposed treatment thereunder.

30. No probative evidence has been offered to this Court indicating that the Debtor can obtain financing or successfully market the Property as contemplated in the Disclosure Statement.

31. The Disclosure Statement refers to a Plan of Reorganization that is not capable of being confirmed.

32. The Disclosure Statement fails to refer to a classification for the secured creditors listed in Debtor's amended Schedule B–2 filed on February 2, 1990.

33. The Disclosure Statement fails to provide a reference to outstanding real estate taxes.

34. The Disclosure Statement, while relying on the lease structure of the Property, fails to identify the terms of existing leases, including those to be assumed, and fails to identify market or vacancy rates for similar downtown St. Louis office space.

35. Debtor's Disclosure Statement is severely deficient in the amount and type of information required by 11 U.S.C. § 1125.

The Plan proposed is not capable of being confirmed. Therefore, the Disclosure Statement referring to such a Plan of Reorganization cannot be approved by this Court.

36. The Debtor's undue delay of approximately one year since commencement of this case is prejudicial to creditors of the estate, as well as to the Debtor.

■ 37. There is not a reasonable possibility that the Debtor can submit a feasible Plan of Reorganization.

38. "Cause" exists under 11 U.S.C. § 1112(b) to dismiss this case or to convert this Chapter 11 reorganization case to a case under Chapter 7 of the Bankruptcy Code.

39. Debtor has not requested conversion of this case to a case under Chapter 7 of the Bankruptcy Code, and the best interests of the creditors, as well as of the Debtor, will be served by dismissal of this case.

Therefore, by separate Order entered on July 12, 1990, this Reorganization case has been dismissed upon the Motions of the United States Trustee and The Howard Savings Bank.

■ Upon consideration of the further oral requests of the Debtor presented on July 12, 1990, the Court announced that the Debtor is not likely to succeed on the merits of an appeal of this Order; and that the Debtor will not suffer additional irreparable injury if this Order is not stayed pending appeal; and that no substantial harm will occur to other interested parties if this Order is not stayed; and that the public interest will not be harmed if this Order is not stayed. Therefore, the Debtor's oral request for a stay of the Order dismissing this case was also denied.

### ORDER

At Saint Louis, in this District, this 12th day of July, 1990.

Upon consideration of the record as a whole, including the arguments presented at the hearing on July 12, 1990,

IT IS ORDERED that this hearing be concluded; and that the objections on behalf of the United States Trustee and the Howard Savings Bank are SUSTAINED; and that the Debtor's request to approve a disclosure statement is DENIED for want of adequate information as required by Section 1125 of Title 11 of the United States Code; and

That as soon as practicable, the Howard Savings Bank and the United States Trustee are to submit proposed Findings and Conclusions consistent with those announced by the Court at the conclusion of this hearing.